IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

In Re:

Weakley Bayou, Incorporated,                              Case No. 22-30583

    Debtor.

### FINAL ORDER GRANTING MOTION TO DISMISS (DOC. 69)

This chapter 11 bankruptcy case of Weakley Bayou, Incorporated ("Weakley Bayou" or "debtor") is before the court on the motion to dismiss by movants Javan Montgomery, LPM3 Realty LLC, Lighthouse Property Management, LLC, and Safe Harbor Realty Management, LLC (collectively, "movants"). The motion has been fully briefed, and the court heard oral argument on the motion to dismiss at a hearing held on December 9, 2022. Having carefully considered the parties' positions, the record, and applicable law, the court dismisses this bankruptcy case based on both bad faith and abstention.

### Background[1]

Debtor owns an 84-unit apartment complex in Pensacola, Florida, "Aqua Porta Apartments." The president and sole shareholder of debtor is Barbara Regan, who is 91 and lives in an assisted living facility. According to debtor, in May 2019 Barbara Regan rejected an offer from Javan Montgomery to purchase Aqua Porta Apartments for $3.5 million. Debtor contends that soon after – and without Barbara Regan's knowledge – her nephew Lee Hagler and

---

[1] These facts are mainly taken from debtor's case management summary and the briefing of the parties. They are not findings of fact and are intended only to provide a brief background for the legal discussion that follows.

1

her cousin Lillian Scott entered into a "Lease with Option to Purchase Agreement" (docs. 12-1, 93-3) with Javan Montgomery and/or one or more of the movants for the lease-purchase of Aqua Porta Apartments and numerous other properties. Hagler and Scott purportedly did so by using a durable power of attorney in their favor by Barbara Regan.

The lease-purchase agreement requires payments of $3,000 per month, with an additional $10,000 per month payment to go towards the purchase price of $3.5 million. Besides Aqua Porta Apartments, the purchase option includes about twenty properties located in Florida and Alabama. Some are owned by "Campsites, Inc." and some are owned by Barbara Regan individually or jointly with James Regan.

In its case management summary (doc. 66), debtor states that it "strongly believes that Mr. Montgomery, together with Lee Hagler and Lillian Scott (who has since passed away), acted in concert to funnel money and property to Mr. Montgomery and his affiliates for shockingly low consideration." (*See id.*, at p.3). Starting in 2022, debtor began pursuing claims against the movants in various forums, including a complaint to the Florida Department of Professional and Business Regulation, Florida Bar complaints, and taking criminal action against Mr. Montgomery.

On September 2, 2022, debtor, through attorney Gregory Wilhelm, filed a 95-page complaint in the Circuit Court of Escambia County, Florida. The complaint included counts against the movants and others for declaratory and injunctive relief, as well as the emergency appointment of a receiver, all pursuant to Florida state law. (*See* complaint, docs. 69-5, 93-2; *see also* case management summary, doc. 66, at p.3). The state court at first granted the appointment of a receiver but orally set that ruling aside on September 12, 2022, finding that

debtor did not give the defendants adequate notice of the action before the appointment of a receiver.  (*See* transcript of state court hearing, doc. 63-1).  The next day, September 13, debtor filed this bankruptcy case through attorney Gregory Wilhelm, who signed the petition as "General Counsel" for debtor.  Debtor filed a Notice of Voluntary Dismissal (doc. 69-6) of the state court complaint on September 19.

Debtor's stated reason for filing is "an apparent fraud perpetrated by Javan Montgomery and his affiliates against the [d]ebtor and its owner, Barbara Regan, in an effort to 'purchase' the [d]ebtor's property, along with many other properties, for a severely low amount."  (*See* case management summary, doc. 66, at pp. 1-2).  It "filed this case to provide itself with an opportunity to reorganize and investigate the wrongful actions of the [m]ovants."  (Debtor's objection, doc. 93, at ¶25).

Debtor states that it will file "an adversary proceeding in this [c]ourt seeking a ruling, among other things, that the Lease Agreement is invalid and is *void abinitio* [sic].  The [d]ebtor intends on filing that adversary proceeding within the next two weeks because of the urgent nature of this matter."  (*See* case management summary, doc. 66, at pp. 3-4).  Determination of the adversary proceeding will control the rest of the bankruptcy case:

> Regardless of the outcome of the dispute regarding the validity of the Lease Agreement, this [d]ebtor needs the protection of this [c]ourt to reorganize.  In the event the Lease Agreement . . . is determined to be invalid, the [d]ebtor will regain actual possession of its property and will be able to properly reorganize.  In the event the Lease Agreement is determined to be valid, the [d]ebtor will seek to reject the Lease Agreement in this [c]ourt. . . .
>
> . . .
>
> [E]ven in the event that the [c]ourt determines that the Lease Agreement is valid, the Lease Agreement can either be rejected pursuant to Section 365 of the Bankruptcy Code or avoided as a fraudulent transfer for lack of consideration.

(Debtor's objection, doc. 93, at ¶¶ 4, 34).   Debtor has not yet filed an adversary proceeding because it believed it imprudent to do so while the motion to dismiss was pending.

Mr. Wilhelm, debtor's representative at the meeting of creditors, testified that the state court defendants had requested a receiver bond of over $1 million: "We also discussed the concerns that we could not come up with that particular monies, and we figured that the only place, the only court that could provide the protection for the rights of debtors, bankruptcy court."   (*See* transcript of meeting of creditors, doc. 97-1, at 12:5-11).   He also testified about debtor's plan for reorganization: "Very very – it's a very simple plan.   Our goal is to go through an adversarial proceeding, get rid of this fraudulent documents through an adversarial proceeding."   (*See id.*, at 13:5-12).   Debtor has few creditors and none were pressing it at the time of filing.

## Legal Discussion

Movants request dismissal of this chapter 11 bankruptcy case under Bankruptcy Code §§ 1112(b) and 305(a)(1).   Code § 1112(b) states in pertinent part that "the court shall . . . dismiss a case under this chapter . . . for cause . . . ."   Code § 305(a)(1) governs abstention and states in pertinent part that "[t]he court . . . may dismiss a case . . . at any time if . . . the interest of creditors and the debtor would be better served by such dismissal . . . ."   The court addresses each section below.

Dismissal under Bankruptcy Code § 1112(b)

Bad faith constitutes "cause" to dismiss a chapter 11 bankruptcy case. *See In re Outta Control Sportfishing, Inc.*, 642 B.R. 180, 183 (Bankr. S.D. Fla. 2022). There is no set test to determine "'whether a debtor has filed a petition in bad faith.'" *See id.* (citation omitted). The determination "is subject to judicial discretion under the circumstances of each case" and is "made on a case by case basis . . . ." *See id.* (citations and quotation marks omitted). "In reviewing [c]hapter 11 cases alleged to have been filed in bad faith, courts look to all of the evidence and the totality of the circumstances to determine what is really happening, and the true intent and purpose behind the filing." *See In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 456 (Bankr. N.D. Fla. 2011); *see also In re Outta Control Sportfishing*, 642 B.R. at 183.

Bankruptcy petitions "'arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtor[].'" *See In re Outta Control Sportfishing*, 642 B.R. at 185 (citation omitted). But "courts have found bad faith where there is an apparent two-party dispute that can be resolved outside of the [b]ankruptcy [c]ourt's jurisdiction." *See id.* (citation and quotation marks omitted); *see also Matter of Asanda Air II, LLC*, 600 B.R. 714, 721-22 (Bankr. N.D. Ga. 2019). "For instance, where the debtor faces no threat from any of its other purported creditors, its financial problems are a two-party dispute suitable for resolution outside of the bankruptcy court, which supports a finding of bad faith." *Id.* (citation, quotation marks, and brackets omitted); *see also In re Davis Heritage*, 443 B.R. at 456 ("The Debtor's financial problems involve a two-party dispute between it and [a creditor] that can be resolved in state court."). Reorganization as a "potential byproduct of filing" cannot overcome dismissal where the

debtor's "primary purpose was to litigate . . . in a more favorable forum."  *See In re Outta Control Sportfishing*, 642 B.R. at 185.

The court finds that dismissal for cause is warranted here.[2]  This bankruptcy case clearly arises out of a two-party dispute which can be litigated in state court.  The lease-purchase validity issue involves solely state-law claims, about twenty properties which are not part of this bankruptcy estate, and non-debtors (Barbara Regan and Campsites, Inc.) who would be indispensable parties.[3]  This court would be put in the anomalous position of determining the validity of an agreement with non-debtors over properties that are not part of the bankruptcy estate.[4]  All of these issues and the addition of indispensable non-debtor parties can be handled in state court without running afoul of this court's jurisdictional limits.

The debtor may ultimately not need to be in bankruptcy.  The underlying issue – the dispute about the validity of the lease-purchase agreement – is the crux of this case and does not involve bankruptcy law at all.  Bankruptcy Code § 365 providing for lease rejection will not come into play if the agreement is declared invalid.  Debtor cannot effectively reorganize until

---

[2] Movants also request dismissal for cause because debtor lacked corporate authority to file this bankruptcy case.  As discussed with the parties at the hearing, the court is not reaching this issue because it involves disputed issues of fact that would require an evidentiary hearing.  The court also notes that "bad faith" is a bankruptcy term of art and is perhaps too harsh to describe situations dealing with two-party disputes like the one at hand.  The court is not making any finding regarding subjective bad faith on the part of debtor or its counsel.

[3] The court recognizes that there are multiple parties involved in the underlying dispute.  The term "two-party dispute" in this context refers to the fact that this bankruptcy case is basically a dispute between two sides that does not involve other creditors.

[4] And the result might not be the same as to all the properties.  The court questions whether the terms of Barbara Regan's durable power of attorney or the assignable powers allowed under Florida law would extend to actions purportedly taken as a corporate officer regarding corporate assets (as opposed to her own assets).  *See* Fla. Stat. §§ 709.2101, *et seq*.  In any event, this is a state law issue a Florida state court is better suited to decide.

the lease-purchase issue is resolved, which could take months, if not over a year. *See, e.g.*, *Matter of Asanda Air*, 600 B.R. at 722 (dismissing case under § 1112(b) where the entire case "depend[ed] on the resolution" of a two-party dispute). While debtor may prefer bankruptcy court to state court because it believes that this court can resolve these issues more quickly, that factor is not enough for this court to exercise jurisdiction over this case. If debtor succeeds and the state court declares the lease-purchase agreement void, debtor will probably not need bankruptcy or at least will be in a better position to reorganize at that point. If debtor does not succeed and a state court determines that the lease-purchase agreement is valid, nothing herein will prevent debtor from refiling bankruptcy to attempt to reject the lease at that point.

Finally, while not dispositive, to the extent that debtor filed this bankruptcy case because it could not afford a high receivership bond, that factor also supports dismissal. *See, e.g.*, *In re Outta Control Sportfishing*, 642 B.R. at 185-86.

Dismissal under Bankruptcy Code § 305(a)(1)

Even if dismissal is not warranted under § 1112(b), abstention and dismissal is appropriate under § 305(a)(1). "Abstention under § 305 is . . . determined on a case-by-case basis . . . ." *See In re E. 30A Rest. Assoc., LLC*, No. 17-30450-JCO, 2017 WL 4857418, at *2 (Bankr. N.D. Fla. Oct. 25, 2017). Factors include:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

7

(4) whether there is an alternative means of achieving the equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*See id.*, at *2-3.   All of these factors, except for factors five and six, apply to this bankruptcy case.

The same reasons that support dismissal under § 1112(b) support abstention and dismissal under § 305(a).   Factor seven (debtor's purpose for seeking this court's jurisdiction) is detailed above; in short, this is essentially a two-party dispute that can be better handled elsewhere.   *See, e.g.*, *In re Efron*, 535 B.R. 505, 511 (Bankr. D.P.R. 2014), *aff'd*, 529 B.R. 396 (B.A.P. 1st Cir. 2015); *In re Argus Grp. 1700, Inc.*, 206 B.R. 737, 755-56 (Bankr. E.D. Pa. 1996).   As to factor four, debtor's only asset is the Aqua Porta Apartments, and debtor's rights regarding that asset are largely dependent on whether the lease-purchase agreement is valid. This factor weighs slightly in favor of abstention because this court has no power to distribute the many non-estate assets covered in the disputed lease-purchase agreement.   *See, e.g.*, *In re Efron*, 535 B.R. at 511 ("Although the bankruptcy court has broad jurisdictional powers under the Bankruptcy Code, Congress did not intend it to become a court of general jurisdiction where any matter is heard as long as debtor is somehow involved.").

Factors one, two, and three overlap, and all weigh against proceeding with this bankruptcy case as a "holding pen" until an adversary proceeding about the validity of the lease-

purchase agreement is resolved. *See, e.g.*, *In re E. 30A Rest. Assoc.*, 2017 WL 4857418, at *3. For the reasons discussed above, even if the court did not abstain from the entire bankruptcy case, it would abstain from the adversary proceeding under 28 U.S.C. § 1334(c)(1) and/or (2) when filed and require the parties to litigate those purely state law issues elsewhere and then come back to this court – which debtor can still do if it needs a chapter 11 reorganization after the state court suit is over. Debtor's strategic decision to voluntarily dismiss the state court case, thus losing about three months of state court litigation time, does not change the fact that state court is still available for debtor to litigate the validity of the lease-purchase agreement. *See, e.g.*, *id.*, at *3 ("Furthermore, resolution of the state court matters must occur before the Debtor can determine whether to assume or reject the lease, let alone propose a plan. Therefore, the first three factors weigh in favor of dismissal by abstention.").

## Conclusion

To the extent the court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. For the reasons discussed above, the court grants the motion to dismiss and dismisses this chapter 11 bankruptcy case.

Dated:  December 20, 2022

_____
HENRY A. CALLAWAY
U.S. BANKRUPTCY JUDGE